In re James T. BALDWIN, Nan W. Baldwin, Debtors.

Thomas C. SCOTT, Trustee in Bankruptcy for James T. Baldwin and Nan W. Baldwin, Plaintiff,

v.

BANK ONE TRUST COMPANY, N.A., et al., Defendants.

Bankruptcy No. 2–88–05792.
Adv. No. 2–90–0004.

United States Bankruptcy Court, S.D. Ohio, E.D.

April 20, 1992.

Bonnie I. O'Neil, Thompson, Hine & Flory, Columbus, Ohio, for plaintiff.

Michelle T. Sutter, Bank One Trust Company, N.A., Columbus, Ohio, for defendant Bank One.

## ORDER ON PLAINTIFF THOMAS C. SCOTT, TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This matter is before the Court upon the Plaintiff Thomas C. Scott, Trustee's Motion for Summary Judgment and the Memorandum of Bank One Trust Company, N.A. in Response to Motion of Trustee for Summary Judgment, as well as the other pleadings filed by the parties in support of their respective positions.

The Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(a)(2)(E) and (O).

### I. *Statement of Facts*

The uncontested facts are as follows: On November 9, 1988, Debtors James T. Baldwin and Nan W. (Kinsey) Baldwin ("the Debtor") filed a Chapter 7 bankruptcy petition. The Plaintiff, Thomas C. Scott, is the Trustee in bankruptcy for the Debtor. The Debtor is a beneficiary under a trust created by her deceased former spouse, David L. Kinsey ("the Grantor"), known as the David L. Kinsey Residual Trust ("the Trust"). Defendant Bank One Trust Company ("Bank One"), the successor corporation of City National Bank and Trust Company of Columbus, is the Trustee of this Trust.

On or about March 23, 1966, the Grantor entered into a Trust Agreement with Bank One. Upon the Grantor's death on April 30, 1971, two separate trust funds were created in accordance with the Trust Agreement. These trust funds were denominated "Trust Fund No. 1" and "Trust Fund No. 2". The entire assets comprising the corpus of Trust Fund No. 1 have been exhausted.

Article II, paragraph 3 of the Trust Agreement provides for the distribution of income and principal from Trust Fund No. 2 as follows:

(a) After the payment of all taxes, charges and expenses attributable to Trust No. 2, the Trustee shall pay the net income to or for the benefit of Grantor's said wife, for and during her life.

(b) If, in the judgment of the Trustee, the circumstances of said wife make it necessary or desirable, the Trustee may pay to or use for her benefit from time to time such amounts of the income or principal of Trust No. 2 as the Trustee may determine; provided, however, that the Trustee shall not make such payments of principal from Trust No. 2 until the entire assets of Trust No. 1 are first exhausted.

(c) The Grantor's said wife shall have the right to withdraw annually Five Thousand ($5,000.00) or five percent (5%) of the corpus of this Trust designated as Trust No. 2, whichever is the greater amount, as valued by the Trustee as of the date of such withdrawal, upon written request therefore. Said annual right of withdrawal shall not be cumulative and may not be exercised until the entire assets of Trust No. 1 are first exhausted.

After commencement of her bankruptcy, the Debtor received six monthly payments of interest from the Trust by order of this Court entered July 25, 1989. No further distributions from the Trust have been received by the Debtor.

The Trustee, through his Motion for Summary Judgment, asks the Court to order Bank One to turn over the assets of the Trust as property of the bankruptcy estate within the meaning of 11 U.S.C. § 541(a). Bank One asserts that the Trust assets are excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). That section provides that "a restriction on the transfer of a beneficiary interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title."

## II. Conclusions of Law

At issue in this adversary proceeding is the enforceability under Ohio law of a miscellaneous provision of the Trust commonly referred to as a "spendthrift" provision. That provision, found in Article VII, paragraph 3 of the Trust provides:

The right of the Grantor's wife, Nan Kinsey, to income of Trust No. 2 during her lifetime shall not be subject to assignment, alienation, pledge, attachment, or claims of creditors and also transfers shall be void as to the Trustee in the administration of the Trust. Alienation of the remaining beneficial interests as to all trusts hereunder, other than Trust No. 2 as aforesaid, shall be determined in the following manner: If because of any alienation or attempted alienation of any interest or right to receive payments under any trusts hereby created by any beneficiary, or if, from any cause whatsoever such payments or any part thereof shall, or but for this proviso would, at any time become payable or passed to or for the benefit of any person other than such beneficiary to receive such payments shall cease and determine and thereafter said payments or such part thereof shall become so forfeited by such beneficiary, shall be applied as determined by the Trustee in its uncontrolled discretion to use of any other beneficiary or beneficiaries in such manner and portions as the Trustee may deem best; provided further that notwithstanding any forfeiture of a beneficiary as aforesaid, the Trustee in its uncontrolled discretion so to do, may from time to time apply or direct the application of said portion of such payments forfeited as aforesaid, or

so much thereof, as to it seems best, and the use of the beneficiary so forfeiting the same.

■ If this "spendthrift" provision is enforceable under applicable nonbankruptcy law (i.e. Ohio state law), it would exclude the assets of the Trust from the bankruptcy estate under 11 U.S.C. § 541(c)(2). Both parties agree that the Trust Agreement is subject to Ohio law.

Until recently, the enforceability of a spendthrift provision in the state of Ohio was open to question. The Ohio Supreme Court resolved this issue on October 9, 1991 in its decision in *Scott v. Bank One Trust Company, N.A.*, 62 Ohio St.3d 39, 577 N.E.2d 1077 (1991). The court held that spendthrift trusts are enforceable in Ohio and in reaching this conclusion overruled its decision in *Sherrow v. Brookover*, 174 Ohio St. 310, 189 N.E.2d 90 (1963).

The court defined a spendthrift trust as a trust that imposes a restraint on the voluntary and involuntary transfer of the beneficiary's interest in the trust property. 1 Restatement of the Law 2d, Trusts (1959) 311, § 152(2). The trust provision at issue in *Scott* did not expressly restrain the alienability of the beneficiary's interest in the trust property, thus the court had to determine whether the trust provision in question constituted a true spendthrift provision.

The provision in question in *Scott* contemplated outright distribution by the trustee to the beneficiary unless any of three disabling conditions occurred. The trustee was precluded from distributing trust property outright: 1) if the beneficiary was insolvent; 2) if the beneficiary filed a petition in bankruptcy; or 3) if the beneficiary would not enjoy the property. Upon the occurrence of any of the above three disabling conditions, the trust became discretionary, and the beneficiary was only again entitled to outright distribution of the trust property when all of the above conditions ceased to exist.

The court concluded that the provision, while not identical to what is generally recognized as a "true" spendthrift provision, accomplished the same goal as a spendthrift trust. The Court stated, "while the trust provision at issue does not forbid the alienation of McCombe's (the beneficiary) interest in the trust property, it does in effect prevent such alienation." *Scott*, 62 Ohio St.3d 39, 45, 577 N.E.2d 1077. In *Scott*, the trustee conceded that the beneficiary's interest in the distribution was alienable, but the court found that the nonenjoyment clause in the trust prevented the trustee from distributing trust property unless the beneficiary would personally enjoy it. The court found that the non-enjoyment clause made the beneficiary's future interest in the trust property worthless to anyone but the beneficiary.

■ The court's analysis in *Scott* is relevant for our purposes, as we must also make a determination of whether the trust provision in the instant action is a true spendthrift provision. As the court recognized in *Scott*, no particular form of language is necessary to create a spendthrift trust, but the settlor must manifest her intention in language which is clear and unequivocal.

■ Article VII Section 3 of the Trust in the case at bar was obviously designed to provide financial protection for the beneficiary. The first sentence in Section (3) renders any attempted alienation or attachment of the beneficiary's right to the income from Trust No. 2 void. Unquestionably, this clause is a restraint on the voluntary or involuntary transfer of the beneficiary's interest and, therefore, is an enforceable spendthrift provision.

The second sentence of Section (3) shares some of the same characteristics as the provisions at issue in *Scott*. It provides for conversion of the remaining beneficial interests as to all trusts into a discretionary trust upon the happening of a designated event. Should the right to receive payments under any of the trusts become payable to any person other than the beneficiary, the sentence provides that the beneficiary's interest and right to receive such payments cease and determine. Thereafter, the Trustee is given complete discretion to make distributions to the benefi-

ciary but is under no obligation to make such distributions. This provision, like the provision at issue in *Scott,* was intended to accomplish the same goal as a spendthrift trust, i.e. to keep the grantor's estate from the hands of the beneficiary's creditors.

■ Plaintiff argues that the spendthrift provision only applies to the Debtor's beneficial interest under Trust No. 1 and right to receive income under Trust No. 2. It is true that the first sentence of Article VII, Section 3 only applies to the Debtor's beneficial interest under Trust No. 1 and right to receive income under Trust No. 2. However, the second sentence under Section 3 references what will happen to the remaining beneficial interests under the Trust upon an attempted alienation. As previously discussed, this sentence provides for the conversion of the remaining trusts (not dealt within the first sentence) into a discretionary trust upon the occurrence of an attempted alienation of any interest or right to receive payments under any of the trusts created. The income of Trust No. 2 is the only beneficial interest not subject to this provision as it is specifically dealt with in the first sentence. Therefore, the construction posited by the Plaintiff cannot be accepted.

■ Other jurisdictions in which spendthrift trusts have been recognized as valid under state law have held that trusts containing spendthrift provisions may not qualify as a spendthrift trust if the trust contains other provisions which may mitigate against such a finding. *In re Gallagher,* 101 B.R. 594 (Bankr.W.D.Mo.1989). The existence of an anti-alienation provision does not in and of itself qualify the trust as a spendthrift trust. The trust must still meet certain standards to be excluded from the bankruptcy estate pursuant to § 541(c)(2). *In re Swanson,* 873 F.2d 1121 (8th Cir.1989). In *Gallagher,* the court cited to the *Swanson* opinion as well as *In re O'Brien,* 94 B.R. 583 (W.D.Mo. 1988), for the proposition that the existence of certain rights and privileges preclude the characterization of a spendthrift provision as a spendthrift trust.

The *Gallagher* court concluded that a trust that contains a spendthrift provision cannot be a spendthrift trust if: (1) the settlor of the trust is also the beneficiary of the trust; (2) the beneficiary has dominion and control over the trust; (3) the beneficiary may revoke the trust; or (4) the beneficiary has powers in the trust. *Gallagher* 101 B.R. 594, 600, citing *Swanson,* 873 F.2d 1121, 1124; *O'Brien,* 94 B.R. 583, 587. The existence of such powers rather than the exercise of the powers deny spendthrift status. *Swanson,* 873 F.2d 1121, 1124.

■ In determining whether such defects exist, the overriding policies of the Bankruptcy Code must be kept in mind. It is the policy of the Code to enlarge the bankruptcy estate to the extent possible under the Code in an effort to provide creditors with the distribution to which they are entitled. Accordingly, § 541(c)(2) must be narrowly construed to avoid impinging upon the policies sought to be furthered by the Code.

■ Clearly, the Trust in the instant action contains neither a provision that renders it a self-settled trust, nor a provision that grants the beneficiary revocation powers. Thus, the only remaining question is whether the Trust gives the beneficiary dominion and control over the Trust so as to preclude a conclusion that the Trust is a spendthrift trust.

The Plaintiff notes that the Trustee for the Trust is not permitted to sell or otherwise dispose of Trust assets, to invest funds of the Trust estate or manage or improve property of the Trust estate without Debtor's approval during Debtor's lifetime. The Plaintiff also contends that the Debtor's ability to replace the Trustee exhibits dominion and control on the part of the Debtor.

In support of his argument, the Plaintiff relies on the reasoning of *Swanson.* The trust involved in *Swanson* was a retirement fund under which members were entitled to access their contribution upon termination of employment. The *Swanson* court found that this limited right of control over the funds was inimical to the policies which

underlie spendthrift trusts. The court concluded, "We believe that the fund is actually a form of deferred compensation, whereas a spendthrift trust is generally used to provide for maintenance and support of its beneficiaries." *Swanson*, 873 F.2d 1121, 1124.

Plaintiff also relies on *Gallagher* and *McClatchey v. Dennis (In re Dennis)*, Adv. Pro. No. 2–89–0063, slip op. (Bankr. S.D.Ohio, May 17, 1990), both of which involved pension and retirement plans. The provision in *Gallagher* gave the beneficiary control over when benefits could be received and the power to revoke the trust. The debtor in *McClatchey* also had the ability to access the funds of the plan through the debtor's own actions. Under such circumstances, a spendthrift trust could not be found to exist.

The Debtor in the case at bar certainly lacks the direct ability to exercise the degree of dominion and control illustrated in the cases relied upon by the Plaintiff. The Debtor has the ability to approve certain actions proposed to be taken by the Trustee with respect to the Trust corpus; however, these powers do not include the right to direct the Trustee to pay over the funds of the corpus to the Debtor.

The Debtor is given the power to replace the Trustee. The Trust provides that the Debtor may only replace the current corporate trustee with another corporate trustee. While it would appear that use of the term "corporate trustee" anticipates the services of another banking institution, the term "corporate trustee" is not defined in the Trust document. Theoretically, any corporation of the Debtor's choosing could serve as the Trustee at her discretion.

The Trust provides that the Debtor may receive distributions from the Trust at the discretion of the Trustee. The Debtor, under the terms of the Trust, could create a corporation of which she, or a family member, was the sole shareholder and officer and appoint the corporation as Trustee. She would thus, in effect, appoint herself as Trustee.

Such an arrangement would be no different than the circumstances present in the cases previously cited.

While appellant as beneficiary cannot assign or alienate his interest in the trusts, he as sole officer and director of the settlor P.A. can amend or terminate the trusts. That appellant can only amend or terminate the pension plans in his capacity as agent for the P.A. is not important here. He alone enjoys the authority to act, whether as an agent of the settlor or in his own right as trustee and beneficiary. He therefore enjoys "absolute dominion" over the property of the trusts. The reasons for creating and enforcing spendthrift trusts would not be served if we were unwilling to look beyond legal forms in this case. Cf. *Matter of Witlin*, 640 F.2d 661, 663 (5th Cir.1981) ("There is ... a strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for this own benefit which would be exempt from the claims of his creditors.").
*In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.1985).

The Court recognizes that the Debtor has not taken any action to effectuate such an arrangement, and it is not the Court's intention to impute any such motive to the Debtor. However, the Court must analyze the terms of the Trust not only for the actual exercise of dominion and control by the Debtor but also for the ability of the Debtor to exercise dominion and control. *Swanson*, 873 F.2d 1121, 1124.

The Court therefore finds that the terms of the Trust at issue in this case afford the Debtor the ability to exercise dominion and control over the Trust which is contrary to the purpose and operation of a spendthrift trust. Therefore, it is hereby

ORDERED that the Plaintiff Thomas C. Scott, Trustee's Motion for Summary Judgment is hereby GRANTED.

IT IS SO ORDERED.