Plaintiff-appellant Jenny Hastings appeals from a summary judgment rendered in favor of defendant-appellee Security National Bank. Hastings claims that the record indicates genuine issues of material fact precluding summary judgment. Hastings claims that Security National Bank, as trustee, abused its discretion in disbursing monies from the trust estate to Hastings prior to the scheduled termination of the trust.
In light of the parties' failure to file depositions in this case, we conclude that the record does not portray genuine issues of material fact precluding summary judgment. We also conclude that Security National Bank is not liable to Hastings for having exercised its discretion to disburse monies from the trust property in response to Hastings's requests for additional funds. Accordingly, the judgment of the trial court is Affirmed.
 I
In 1975, Mabel R. Ellis, Hastings's mother, executed a trust agreement naming Society National Bank of Cleveland as the trustee. The terms of the trust agreement require the trustee to invest and to manage all cash and securities deposited by the grantor during the grantor's life. Upon the grantor's death, the trustee is authorized to pay the net income generated by the trust to Hastings at least quarter-annually for her lifetime. If Hastings's annual income is insufficient to provide for her reasonable maintenance, care, and support, or if any emergency or extraordinary circumstances occur that require additional funds, the trustee, exercising its discretion, is authorized to pay Hastings monies from the trust principal. The trust agreement authorized Hastings, in her discretion, to remove the trustee and to designate a successor corporate trustee.
Subsequent to the execution of the trust agreement, Ellis amended the terms of the agreement on two occasions. In 1984, Ellis substituted contingent remaindermen in the event that both Hastings and her minor son died before the trust terminated. In 1985, Ellis empowered Hastings to terminate the trust after the expiration of four years following Ellis's death, whereupon Hastings would receive the trust property free from the trust.
Ellis died in January, 1990. In June of that year, Hastings removed Society National Bank of Dayton as the trustee and appointed defendant-appellee Security National Bank and Trust Co. in its place. During the term of the trust, Security National Bank received $882,345 in principal, including deposits and appreciation, which generated income of $75,703. Over the four years following Ellis's death, Hastings made numerous requests for the withdrawal of principal from the trust for a variety of purposes, which included the purchase of a home in Pine Island, Florida, with improvements, the purchase of two Florida condominiums, and the purchase of eight automobiles, including two Porsche sports cars. In February, 1995, Security National Bank, at Hastings's request, terminated the trust and distributed the remaining principal amount, $10,197, to Hastings.
In July, 1995, Hastings brought this action against Security National Bank, alleging that the bank breached its fiduciary duty as trustee by distributing monies from the trust to Hastings for purposes contrary to the terms and intent of the trust agreement. Hastings sought declaratory relief and compensatory damages.
After discovery, Security National Bank and Hastings filed motions for summary judgment. The trial court granted Security National Bank's motion, overruled Hastings's motion, and dismissed the action.
From the summary judgment rendered against her, Hastings appeals.
 II
Hastings First, Second, Third, and Fourth Assignments of Error are as follows:
 THE TRIAL COURT INCORRECTLY GRANTED DEFENDANT SUMMARY JUDGMENT BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER THE DEFENDANT BREACHED ITS FIDUCIARY DUTY AS TRUSTEE BY FAILING TO ADHERE TO THE INTENTION OF THE TRUST.
 THE TRIAL COURT INCORRECTLY GRANTED DEFENDANT SUMMARY JUDGMENT BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER THE DEFENDANT BREACHED ITS FIDUCIARY DUTY AS TRUSTEE WHEN IT INVADED THE PRINCIPAL OF THE TRUST FOR PURPOSES OTHER THAN ILLNESS, EMERGENCY, OR ANY EXTRAORDINARY OR UNUSUAL CIRCUMSTANCES.
 THE TRIAL COURT INCORRECTLY GRANTED DEFENDANT SUMMARY JUDGMENT BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER THE DEFENDANT BREACHED ITS FIDUCIARY DUTY AS TRUSTEE WHEN IT INVADED THE TRUST FOR ITS OWN BENEFIT.
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT WHEN IT FAILED TO CONSIDER ALL OF THE EVIDENCE INCLUDING DEPOSITIONS OF THE PARTIES.
Hastings argues that the record portrays genuine issues of material fact concerning whether Security National Bank breached its fiduciary duty by disbursing trust property without first determining whether her income was sufficient to meet her reasonable needs or whether, in fact, an emergency or extraordinary circumstance existed. Hastings also argues that the record portrays genuine issues of material fact concerning whether Security National Bank breached its fiduciary duty of loyalty by advancing interest-bearing loans to Hastings and paying for those loans with trust property. In addition, Hastings suggests that the trial court failed to consider all of the evidence before it, including the depositions of the parties, in ruling on the motions for summary judgment.
Our review of the record indicates that none of the depositions taken by the parties were filed with the trial court. Although the parties both relied upon the depositions in arguing their motions for summary judgment, the trial court was not required to consider them in reaching its decision. Civ.R. 56(C) states, "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed inthe action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.) The trial court has a mandatory duty to consider materials properly filed by the parties before ruling on a motion for summary judgment. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360, 604 N.E.2d 138. The depositions in this case were not properly filed, so the trial court had no duty to consider them in ruling upon the parties' motions.
Without the depositions in the record before us, we cannot rely upon them to ascertain whether a genuine issue of material fact existed that would preclude summary judgment. A material fact may not be proven by statements contained in a deposition that was neither filed nor attached to a motion in certified form.Schrader v. Gillette (1988), 48 Ohio App.3d 181, 183-184,549 N.E.2d 218. Our review of the materials properly filed in this case do not raise a genuine issue of material fact. The affidavits of Daniel O'Keefe, vice president of Security National Bank, and Kevin Sonnycalb, Ellis's accountant, as well as the trust agreement and trust account ledger, are all consistent with respect to the material facts in this case. Furthermore, these materials provide sufficient material facts to sustain the trial court's judgment.
Although we find no genuine issue of material fact, we must still review Hastings's claims to determine whether, as a matter of law, the trial court erred in finding that Security National Bank properly exercised its discretion as trustee in disbursing the trust property to Hastings prior to the termination of the trust.
Pertinent sections of the trust agreement provide as follows:
 [3.1](a) During the duration of this Trust created in this section, the Trustee is authorized and empowered to pay the net income to or for the benefit of Grantor's daughter, Jenny Starr Ditmer [Hastings], for and during the term of her natural life in such installments that may be convenient, not less frequently, however, than quarter-annually.
 (b) If at any time during the continuance of this Trust the net income therefrom when added to the income of Grantor's daughter from this Trust, or from other sources known to the Trustee, shall not be sufficient to provide for her reasonable maintenance, care and support, or if by reason of illness, emergency or any extraordinary or unusual circumstances, she should need additional funds, the Trustee, in its sole discretion, shall have the right to encroach on the principal of this Trust and to pay, or use for the benefit of, Grantor's daughter such amounts as may be needed to meet her said requirements, and any payments or use of any portion of the principal for such purposes shall not be subject to question by any person in any court.
The trust was amended to give Hastings an absolute right and option to terminate the trust and receive the trust property at any time after the expiration of four years following Ellis's death.
Hastings suggests that these provisions, taken together, establish a spendthrift trust in which the beneficiary, as the spendthrift, is protected from her own extravagant spending by the trustee. Security National Bank contends that the trust is not a spendthrift trust and that it followed the terms of the agreement in disbursing trust property to Hastings.
"A `spendthrift trust' is a trust that imposes a restraint on the voluntary and involuntary transfer of the beneficiary's interest in the trust property." Scott v. Bank One Trust Co., NA
(1991), 62 Ohio St.3d 39, 44, 577 N.E.2d 1077, citing 1 Restatement of the Law 2d, Trusts (1959) 311, Section 152(2). "As the court recognized in Scott, no particular form of language is necessary to create a spendthrift trust, but the settlor must manifest her intention in language which is clear and unequivocal." In re Baldwin (Bkrtcy.S.D. Ohio 1992), 142 B.R. 210,213. Express language against alienation or assignment of the beneficiary's interest will not be required if, from the whole instrument, it is manifest that such was the intention of the testator. Adair v. Sharp (1934), 49 Ohio App. 507, 512, 3 O.O. 369, 197 N.E. 399.
The trust agreement in this case contains no express restraint on the voluntary or involuntary transfer of the beneficiary's interest in the trust property. Section 6 of the trust agreement, entitled "Alienation of Interest," purports to create such a restraint; however, this provision applies to "any income beneficiary of Trust B." The trust agreement does not create a "Trust B," so we can not apply this provision to Hastings's interest in the trust property. Beyond express language showing a purpose to restrain alienation, the instrument itself does not manifest Ellis's intention to create a spendthrift trust. Payments of net income, at least quarter-annually, are mandatory and not subject to the discretion of the trustee. In addition, Hastings is empowered to terminate the trust after the expiration of four years following Ellis's death, at which time she would receive the undistributed principal and income, thus creating an alienable equitable future interest. See Domo v.McCarthy (1993), 66 Ohio St.3d 312, 320, 612 N.E.2d 706, citingMartin v. Martin (1978), 54 Ohio St.2d 101, 112, 8 O.O.3d 106, 112, 374 N.E.2d 1384, 1391. Accordingly, the relevant provisions of the trust agreement belie the notion that Ellis intended to establish a spendthrift trust.
Notwithstanding our conclusion that the trust is not a spendthrift trust, we are also unconvinced by Hastings's proposition that the sole beneficiary of a spendthrift trust automatically has a cause of action against a trustee who transfers trust property to that beneficiary upon the beneficiary's request. While under certain circumstances such a cause of action may exist, the trustee of a spendthrift trust does not have a legal duty to protect the beneficiary from the consequences of her own lavish spending. The purpose of a spendthrift trust is to protect the beneficiary's interest from creditors by restraining the voluntary and involuntary transfer of that interest. See Scott, supra, 62 Ohio St.3d at 44. The parties have cited no authority to suggest that the trustee of a spendthrift trust, as a matter of law, must protect a wastrel beneficiary from her own extravagance. Indeed, courts have enforced spendthrift trusts that permit the beneficiary to enjoy the benefits of the trust property without limitation, so long as creditors cannot reach it. See id. at 44-45 (concluding that the "nonenjoyment clause" constitutes a restraint on the transfer of the beneficiary's interest). Accordingly, we reject Hastings's suggestion that the nature of a spendthrift trust would automatically entitle her to recover from Security National Bank for the requested disbursements of trust property.
Hastrell also argues that Security National Bank abused its discretion by transferring trust property to her without first verifying the circumstances that would permit the transfer under the terms of the trust agreement.
Section 3.1(b) of the trust agreement gives Security National Bank, in the exercise of its sole discretion, the right to make disbursements from trust property when Hastings's income is not sufficient to provide for her reasonable maintenance, care and support, or for any illness, emergency, or extraordinary or unusual circumstance that requires additional funds. The trust agreement expressly provides that " * * * any payments of any portion of the principal for such purposes shall not be subject to question by any person in any court."
A court will not substitute its judgment for that of the trustee as long as the trustee acts in good faith and does not abuse its discretion. Sherman v. Sherman (1966), 5 Ohio St.2d 27,34, 34 O.O.2d 48, 213 N.E.2d 360. An abuse of discretion amounts to a decision that is grossly violative of fact and logic, demonstrating perversity of will, defiance of judgment, undue passion or extreme bias. Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248, citing State v.Jenkins (1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264.
Daniel O'Keefe, vice president of Security National Bank's trust department, avers in his affidavit that Security National Bank was aware that Hastings had almost no sources of income outside of a small monthly disability check. O'Keefe was informed by Hastings that she wanted to move out of the area for the benefit of her son, who was mentally impaired. According to O'Keefe, Hastings made numerous and regular requests for monies from the trust property, including regular payments on personal obligations for utilities, mortgages, and various installment loans. Moreover, O'Keefe states that Hastings represented nearly every request as being prompted by an emergency or unusual circumstance. Finally, O'Keefe avers that Hastings received periodic statements showing the balance of her trust account, which consistently diminished with each passing period, and that Hastings never objected or complained about the disbursements from the trust property.
As noted earlier, there is no evidence in the record to contradict O'Keefe's affidavit, and we accept it as representing the circumstances surrounding the disbursement of trust property to Hastings. Based on O'Keefe's statements, we conclude that Security National Bank's decision to disburse funds to Hastings from the trust property was within the bounds of its discretion under the trust agreement. Hastings indicated that her income was insufficient to meet her needs and that she was faced with unusual circumstances requiring additional funds. Because the settlor confided broad discretion in the trustee to invade the trust property, we find no reason to entertain Hastings's suggestion that this court hold Security National Bank liable for having failed to make independently verification of her representations.
Hastings also claims that Security National Bank breached its fiduciary duty of loyalty by authorizing various interest-bearing loans to her and by making payments on those loans with monies from the trust property. O'Keefe stated that Hastings conducted her banking with Security National Bank before it became trustee of her trust and that Hastings incurred the installment loan obligations on her own without prior notice to the trust department of Security National Bank, then later requested that installment payments be made out of trust property. From these facts, we find no evidence to suggest that Security National Bank breached its fiduciary duty of loyalty.
Based on the foregoing, we conclude that Security National Bank properly exercised its discretion as trustee in disbursing funds from the trust property to Hastings in response to her repeated requests.
Hastings's First, Second, Third and Fourth Assignments of Error are overruled.
 IV
Hastings's Fifth and Sixth Assignments of Error are as follows:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT WHEN IT DETERMINED THAT THE PLAINTIFF WAS BARRED FROM ASSERTING HER RIGHTS UNDER THE DOCTRINES OF LACHES AND ESTOPPEL.
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT WHEN IT DETERMINED THAT THE PLAINTIFF HAD SUFFERED NO DAMAGES.
Hastings argues that the trial court erred in concluding that she waived her right to object to the disbursements of trust property when she received them and that she is now estopped from pursuing her claims against Security National Bank. Hastings also argues that the trial court erred in concluding that she did not suffer any damages by receiving the trust property prior to the termination of the trust.
Because we have found that Security National Bank properly exercised its discretion in disbursing monies from the trust property to Hastings upon her request, we need not address Hastings's remaining objections to the judgment. The judgment is affirmed for the reasons set forth in Part II, above.
Hastings's Fifth and Sixth Assignments of Error are overruled.
 IV
Hastings's assignments of error having been overruled, the judgment of the trial court is Affirmed.
YOUNG, P.J., and BROGAN, J., concur.
Copies mailed to:
Gregory K. Lind
Daniel Carey
Hon. Gerald Lorig